UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UFCW LOCAL ONE PENSION FUND,
*et al.*,

                Plaintiffs,

    -against-                                      6:19-CV-0645 (LEK/ATB)

L.K.R. ENTERPRISES, INC.,

                Defendant.

## DECISION AND ORDER

### I.    INTRODUCTION

Plaintiffs UFCW Local One Pension Fund ("Fund") and Fund trustees, Frank C. DeRiso, Gregory P. Gorea, Robert Boehlert, Mark Manna, and Michael R. Bull, filed this action against L.K.R. Enterprises, Inc. ("Defendant") seeking monetary relief pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"). Dkt. No. 1 ("Complaint"). After Defendant failed to answer, Plaintiffs filed a request for entry of default, Dkt. No. 6, which the Clerk of the Court entered on July 12, 2019, Dkt. No. 7. Presently before the Court is Plaintiffs' motion for default judgment, filed on August 1, 2019. Dkt. No. 9 ("Motion").

For the reasons that follow, Plaintiffs' Motion is granted.

### II.    BACKGROUND

Under ERISA § 1145, Defendant is required to make contributions into the Fund. According to Plaintiffs, a payroll audit revealed Defendant failed to make required contributions to the Fund for 2017 in the amount of $2,257.35. Compl. ¶ 17. Defendant "also failed to increase

its total contributions to the Pension Fund in Plan Year 2016 by 17.5 percent over the amount of contributions from Plan Year 2015, as required by the collective bargaining agreement ("CBA"), resulting in a delinquency in the amount of $977.31." ("2016 True-Up Contributions"). Id. ¶ 18; Mot. at 3. Additionally, Defendant failed to increase its contributions to the Fund by 17.5 percent in "Plan Year 2017," resulting in delinquency of $10,030.76 ("2017 True-Up Contributions"). Compl. ¶ 18; Mot. at 4. Finally, Defendant "was late in paying the monthly contributions owed for October 2018, November 2018, and January 2019." Id. ¶ 19. "The Fund sent letters to [Defendant] demanding payment of the delinquent amounts owed, but [Defendant] failed to respond or make any payment." Id. ¶ 20.

In total, Plaintiffs requests $13,265.42 in unpaid contributions, $837.97 in interest on unpaid and untimely-made contributions, $2,653.08 in liquidated damages, and $10,117.94 in attorneys' fees and costs. Mot. at 5–6; see also Compl. at 6–7.[1,2]

## III. LEGAL STANDARD

After the Clerk has filed an entry of default against a party that has failed to plead or otherwise defend, a court may enter default judgment upon application of the opposing party. Fed. R. Civ. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). However, default judgment is

---

[1] This portion of the Complaint is not numbered by paragraph. Thus, the Court cites to page numbers.

[2] The Complaint requests $616.06 in interest, while the Motion requests $837.97 in interest. This discrepancy may be explained by the additional interest accrued for Defendant's unpaid and untimely-made contributions.

justified when a party fails to respond after having received proper notice. Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984).

After an entry of default has been entered, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default).

However, a court cannot take allegations in a complaint regarding damages as true. Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 154–55 (2d. Cir. 1999). After determining whether the plaintiff has established liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic, 109 F.3d at 111. To determine the amount of damages in the context of a default judgment, "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Serv., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (holding a full evidentiary hearing not necessary where district judge was "inundated with affidavits, evidence, and oral presentations"); Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Northeast King Construction Co., No. 06-CV-806, 2009 WL 1706586, at *1 (N.D.N.Y. June 16, 2009) (Kahn, J.).

## IV. DISCUSSION

### A. Liability

Defendant has failed to appear in this action or answer Plaintiffs' Complaint, despite having been duly served. Dkt. Nos. 2; 4; 6–7. Since Defendant has failed to appear and the Clerk has made an entry of default, the Court deems true all relevant and well-pleaded factual allegations in Plaintiffs' Complaint when determining liability.

Plaintiffs claim that Defendant has violated ERISA § 1145. Compl. ¶ 23. Section 1145 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

§ 1145.

Plaintiffs allege that the Fund is a multiemployer benefit plan within the meaning of ERISA §§ 1002(3) and 1002(37). Compl. ¶ 5. Plaintiffs further allege the United Food and Commercial Workers District Union Local One and Defendant were parties to a CBA that obligated Defendant to make certain contributions to the Fund. Id. ¶¶ 5, 12–13, 15.

The Court finds that Plaintiffs have sufficiently alleged that Defendant: (1) is an "employer" as defined in ERISA § 1002(5); and (2) is obligated to make contributions to a multiemployer plan, i.e., the Fund, under the terms of a CBA. Compl. ¶¶ 5, 9, 12–13, 15. Further, Plaintiffs have alleged that Defendant, in violation of the CBA, made untimely payments to the Fund and failed to make some payments altogether. Id. ¶¶ 17–19. Consequently, taking all of Plaintiffs' allegations as true, "the Court finds that Plaintiffs have established each of the

4

elements necessary to state a claim pursuant to 29 U.S.C. § 1145 . . . ." See UFCW Local One Pension Fund v. Natoli Indep. Retailers, Inc., No. 12-CV-682, 2012 WL 4793500, at *3 (N.D.N.Y. Oct. 9, 2012) (Kahn, J.).

**B. Damages**

If an employer fails to make required contributions under § 1145, ERISA provides for statutory damages as follows:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

§ 1132(g)(2).

*1. Delinquent Contributions*

Because Defendant is found to have violated § 1145 in failing to make certain contributions to the Fund, Plaintiffs are entitled to receive as damages the total amount of any unpaid contributions. See § 1132(g)(2)(A).

Plaintiffs have submitted documentation from a Fund administrator who possesses personal knowledge of the facts pertaining to this case. Dkt. No. 9-2 ("Ciancaglini Declaration"). Defendant missed three sets of contributions to the Fund: (1) $2,257.35 in monthly payments for

2017; (2) $977.31 in 2016 True-Up Contributions; and (3) $10,030.76 in 2017 True-Up Contributions. Ciancaglini Decl. ¶¶ 13, 19–20, Ex. 5. Thus, the Court awards Plaintiffs $13,265.42 in damages for missed contributions.

### 2. Interest on Unpaid and Untimely-Made Contributions

Plaintiffs are also entitled to receive interest on all unpaid and untimely-made contributions. See § 1132(g)(2)(B).

Pursuant to the terms of the Fund's Policy for Collection of Delinquent Contributions ("Delinquency Policy"), Defendant owes interest on unpaid and untimely-made contributions at a rate of eight percent per year, calculated from the due date until the date paid. See Ciancaglini Decl. ¶ 8. Plaintiffs have submitted documentation demonstrating that Defendant owes: (1) $114.78 in interest on monthly payments that should have been made into the Fund in 2017 but were never paid; (2) $137.09 in interest on missed 2016 True-Up Contributions; and (3) $538.64 in interest on missed 2017 True-Up Contributions. Ciancaglini Decl. ¶¶ 15, 22, Ex. 5. Defendant also owes interest on untimely-made contributions to the Fund for October 2018, November 2018, and January 2019 in the amount of $47.46. Id. ¶ 17–18, Ex. 5.[3] The Court therefore awards Plaintiffs $837.97 in interest.

### 3. Liquidated Damages

Plaintiffs are entitled to the liquidated damages provided for under a multiemployer plan, so long as they do not exceed twenty percent of the unpaid contributions. See § 1132(g)(2)(C). Under the terms of the Fund's Delinquency Policy, Plaintiffs are entitled to liquidated damages in the amount of twenty percent of unpaid contributions. Ciancaglini Decl. ¶¶ 6, 9, Ex. 4. Here,

---

[3] Exhibit 5 lists the amount incorrectly as $47.45.

twenty percent of all unpaid contributions equates to $2,653.08. Id. ¶¶ 16, 23, Ex. 5. Hence, the Court awards Plaintiffs this amount of liquidated damages.

### 4. Attorneys' Fees and Costs

Plaintiffs are also entitled to recoup reasonable attorneys' fees and costs. See § 1132(g)(2)(D). Moreover, the terms of the Fund's Delinquency Policy allow for reasonable attorneys' fees and costs incurred in collecting payment of unpaid contributions. Ciancaglini Decl. ¶ 11.

Even though Plaintiffs' Motion is unopposed, a reviewing court should still examine the reasonableness of the costs and fees requested. See, e.g., Worldcom Technologies, Inc. v. Sequel Communications, Inc., No. 00-CV-1598, 2001 WL 1346178, at *1 (S.D.N.Y. Nov. 1, 2001). Courts in this circuit employ a "presumptively reasonable fee" standard to determine the amount to award as attorneys' fees. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In order to determine what is a presumptively reasonable fee, the court assesses "case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work," which is then multiplied by a reasonable number of hours expended by counsel. McDaniel v. Cty. of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010).

Plaintiffs seek a total of $9,634.37 in attorneys' fees charged by the law firm Slevin & Hart, P.C. Dkt. No. 9-13 ("Gormley Declaration") ¶ 5. The Court has reviewed the documentation submitted by Plaintiffs and finds that all time billed is supported by contemporaneous time records showing—for each attorney—the date or dates worked, the hours expended, and the nature of the tasks completed. Id., Ex. 1. The Court has undertaken an

independent review of the record and considered all relevant factors, and finds that the time billed by Plaintiffs' attorneys on this matter is reasonable. Furthermore, as in Natoli Indep. Retailers, Inc., "the hourly rates requested by each attorney are within the range considered to be reasonable in this district, and are justified by the experience and expertise of the attorneys who worked on this matter." See 2012 WL 4793500, at *5. Accordingly, the Court grants attorneys' fees in the amount listed above.

Plaintiffs also seek costs in the amount of $483.57 expended by Slevin & Hart, P.C. Gormley Decl. ¶ 6. After reviewing the record, the Court finds that these amounts are warranted and therefore awards Plaintiffs $483.57 in costs. Id., Ex. 1.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiffs in the sum of $26,874.41[4] in damages; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

---

[4] This amount is comprised of: (1) $13,265.42 for unpaid contributions; (2) $837.97 in interest on unpaid and untimely-made contributions; (3) $2,653.08 in liquidated damages; and (4) $10,117.94 in attorneys' fees and costs. Plaintiffs, however, assert the total amount of damages should be $26,921.87. Mot. at 5–6. Plaintiffs arrived at this higher figure because they accidentally double counted the amount of interest Defendant owes on its untimely payments, i.e., $47.46. Compare Mot. 6 (listing $837.97 worth of interest owed on unpaid contributions only) with Ciancaglini Decl., Ex. 5 (listing $837.97 worth of interest owed on unpaid *and* untimely-made contributions).

**IT IS SO ORDERED.**

DATED: February 20, 2020
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge